IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARC FALCONE,                                    :
Plaintiff,                                       :
                                                 : CIVIL ACTION
v.                                               :
                                                 : NO. 06-800
WIREDLOGIC, INC., *et al.*                       :
Defendants.                                      :
                                                 :


MEMORANDUM AND ORDER

YOHN, J.                                                    October___, 2006


      Plaintiff Marc Falcone brings this diversity action against defendants WiredLogic, Inc.

("WiredLogic"); DealerTrack Holdings, Inc. ("DealerTrack Holdings"); Cameron Eldred; Gale

H. Shaw, III; Mark O'Neil; and Vincent Passione alleging they failed to compensate him for

services performed during his employment with WiredLogic.  Specifically, Falcone claims that

WiredLogic prematurely terminated him despite guaranteeing his employment for a reasonable

period of time, violated the Pennsylvania Wage Payment and Collection Law ("WPCL") by

failing to unconditionally pay salary due to him, and breached its employment contract with him

by failing to pay him bonuses due under the contract.  Moreover, Falcone alleges that

WiredLogic failed to compensate him for facilitating the corporate acquisition of WiredLogic by

DealerTrack Holdings.  Falcone asserts that DealerTrack Holdings, as WiredLogic's successor, is

liable for WiredLogic's actions under the theory of successor liability.  In addition, Falcone

alleges that Shaw and Eldred, as officers of WiredLogic, and O'Neil and Passione, as officers of

DealerTrack entities, are liable for both breach of fiduciary duty and for failure to pay wages under the WPCL.

Currently pending before the court are motions to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6) ("Rule 12(b)(2)" and "Rule 12(b)(6)") that were filed by defendants DealerTrack Holdings, O'Neil, Passione, Eldred, and Shaw.  WiredLogic has also filed a partial motion to dismiss pursuant to Rule 12(b)(6).

## I. BACKGROUND[1]

Plaintiff's allegations involve his employment by WiredLogic, a Delaware corporation doing business as DealerWire, with a principal place of business in New Hampshire.[2]  (Compl. ¶ 2.)  According to plaintiff's complaint, DealerWire is a subscription service for automobile dealerships that sell new and used cars, and provides information that assists dealers in making better and more profitable business decisions regarding automobile inventory.  (*Id*. at ¶¶ 11-13.)

In April and May of 2005, Falcone inquired about employment at WiredLogic and was put in touch with Eldred, the president and chief executive officer of WiredLogic, and Shaw, the chief operating officer of WiredLogic, who were both located in New Hampshire.  (*Id*. at ¶¶ 15-

---

[1]This recitation of the facts contains undisputed facts, as well as the allegations in plaintiff's complaint, which this court assumes as true as required when a court is deciding motions to dismiss under Rules 12(b)(2) and 12(b)(6).  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

[2]According to the complaint, WiredLogic conducted business under the DealerWire name and also provided a service called DealerWire.  Whether WiredLogic as a corporate entity holds assets or provides any other services beyond the DealerWire service is disputed.  Plaintiff refers to WiredLogic as DealerWire throughout his complaint and does not distinguish between the corporate entity WiredLogic, the trade name DealerWire, or the DealerWire service. To avoid any confusion, the court will refer to plaintiff's employer as WiredLogic and the service it provides as DealerWire, as per the employment contracts that plaintiff himself attaches to his complaint.  (Compl. Ex. A.)

16.)  At this time, Eldred, Shaw, and Falcone allegedly began discussing Falcone's potential

employment by telephone and in-person.  (Eldred & Shaw Mot. to Dismiss, Tab A, Eldred Decl.

¶¶ 13-15 & Tab B, Shaw Decl. ¶¶ 12-17.)  During these discussions, Eldred and Shaw never met

or spoke with Falcone in Pennsylvania, and the only meeting Eldred had with Falcone was in

New Hampshire.[3]  (Eldred & Shaw Mot. to Dismiss, Tab A, Eldred Decl. ¶¶ 13-15 & Tab B,

Shaw Decl. ¶¶ 12-17.)

   During the course of these discussions, WiredLogic allegedly became interested in using

Falcone's services to help expand the DealerWire network by (1) finding individual dealers to

join the DealerWire network, (2) soliciting other automobile-related entities with which

WiredLogic could form partnerships, and (3) arranging for potential investors to acquire

DealerWire.  (Compl. ¶¶ 16-18.)   During April and May, Falcone made contact with persons

responsible at General Motors who Falcone knew were interested in meeting with him to discuss

obtaining services such as those offered by WiredLogic.  (*Id.* ¶ 20.)   In order for WiredLogic to

take advantage of Falcone's preexisting contacts at General Motors, Falcone and WiredLogic

allegedly entered into a "partial temporary employment agreement" on June 2, 2005.  (*Id.* at ¶¶

18-24.)  This contract provided that Falcone was to report directly to Shaw and Eldred, and set

forth Falcone's base salary, a bonus schedule for dealers joining the network, and a bonus

schedule for "partnerships" he made with other automobile services.  (*Id.* at ¶ 23, Ex. A.)  The

document also explained that Falcone's employment was at-will and that he would be eligible for

---

[3]Shaw admits that he placed a telephone call to Falcone while in Pennsylvania when he
and Falcone met for a dinner meeting in Pennsylvania after Falcone became an employee.
(Eldred & Shaw Mot. to Dismiss, Tab B, Shaw Decl. ¶¶ 12-17.)  Shaw asserts that at this
meeting he and Falcone did not discuss any of the terms or conditions of Falcone's employment.
(*Id.*)  These declarations are undisputed by plaintiff.

certain additional bonuses if DealerWire was sold to another entity for a price more than two dollars a share.  (*Id.* at Ex. A.)  Falcone contends that the parties reserved for continued discussion the amount of a finder's fee for finding an entity to acquire the company, which was to be set forth in a new contract in approximately one month.  (*Id.* at ¶¶ 23-24.)

During his entire employment with WiredLogic, Falcone lived and worked from his home in Pennsylvania.  (Pl.'s Omnibus Resp. to the Mot. to Dismiss, Ex. 1, Certification of Marc Falcone ¶ 6.)  In the two months following the June 1, 2005 contract, plaintiff allegedly introduced WiredLogic to a number of his pre-existing contacts at several companies, including: "General Motors, GMAC, Hyundai, Ford Motor Company, Ford Motor Credit, NADA, Nissan Motors, Mitsubishi Motors, Volvo Cars, Hendrick Auto, WANADA, SonicAuto, Lupient, and Ricart."  (Compl. ¶ 46.)  These contacts allegedly resulted in several dealers joining the DealerWire network or becoming partners with WiredLogic.  (*Id.* at ¶¶ 46-49.)

On June 21, 2005, Falcone allegedly found and made contact with DealerTrack Holdings.  (*Id*. at ¶ 27.)  DealerTrack Holdings, a Delaware corporation with a principal place of business in New York, allegedly provides a broad range of subscription-based software products and services to automobile dealerships.  (*Id*. at ¶¶ 3, 14.)  On June 28, 2005, Falcone allegedly had a telephone conference with Passione, president of DealerTrack Holdings,[4] who expressed interested in learning more about DealerWire and requested a demonstration of the service.  (*Id.* at ¶ 28.)

At this time, Falcone alleges that he was still negotiating his compensation with

---

[4]Passione, however, submitted an uncontested affidavit stating that he is the President of DealerTrack, Inc., which is not a defendant in this case.  (Br. in Support of the Mot. to Dismiss of O'Neil & Passione, Tab B.)  The record, however, is devoid of any affidavits or other competent evidence as to the actual corporate relationship between DealerTrack, Inc. and DealerTrack Holdings.

WiredLogic, which assured him that he would be fairly compensated for finding an acquirer such as DealerTrack Holdings.  (*Id.* at ¶¶ 30-31.)  Falcone signed a second at-will employment contract with WiredLogic, dated August 1, 2005, which kept his base salary the same, provided for a bi-weekly draw on future commissions, and made his bonuses for finding new dealers and partners contingent upon continued employment.  (*Id.* at ¶¶ 32-33, Ex. B.)  Like the first contract, the document provided that Falcone would be eligible for certain additional bonuses if DealerWire was sold to another entity for a price more than two dollars a share.  (*Id.* at Ex. B.)  Falcone also alleges that the parties reserved for further discussion the amount of compensation due to Falcone if he found an entity to acquire DealerWire.  (*Id.* at ¶ 32.)  Again, WiredLogic purportedly offered assurances that Falcone would be fairly and fully compensated if he arranged for a company such as DealerTrack Holdings to acquire DealerWire.  (*Id.* at ¶ 34.)

According to Falcone, he worked diligently throughout the months of July, August, and most of September of 2005 to arrange a partnership with or acquisition by DealerTrack Holdings.  (*Id.* at ¶ 35-36.)  However, on September 23, 2005, Falcone learned that representatives of WiredLogic were having meetings with representatives of DealerTrack Holdings without his knowledge.  (*Id.* at ¶ 37.)  WiredLogic then presented Falcone with a new contract on October 3, 2005, which was backdated to August 1, 2005.  (*Id.* at ¶ 38.)  The contract did not provide Falcone with any set salary and changed the compensation to 100% commissions, which were contingent upon continued employment.  (*Id.* at ¶ 38.)

Falcone was evaluating the new offer when WiredLogic notified Falcone he was terminated on October 6, 2005.  (*Id.* at ¶ 39.)  At the time he was terminated, WiredLogic allegedly owed Falcone $800 in salary for work performed in the pay period prior to his

termination, as well as all bonuses he was due for partnerships or dealers he solicited prior to his

August 1, 2005 contract.  (*Id.* at ¶¶ 40, 50.)  WiredLogic sent Falcone a check in the amount of

$800 with the termination notice, allegedly with the condition that if Falcone cashed the check,

he had to agree with the terms of the termination letter.  (*Id.* at ¶ 41.)  Falcone requested that

WiredLogic keep him advised as to the process of various customers or transactions he initiated

while at WiredLogic, but WiredLogic refused to provide him with any information.  (*Id.* at ¶ 42.)

Furthermore, after Falcone's termination, DealerTrack Holdings allegedly acquired

DealerWire on February 6, 2006.  (*Id.* at  ¶ 43.)  Falcone asserts that when DealerTrack Holdings

acquired the DealerWire service and trade name, it acquired all the assets and assumed all the

liabilities of WiredLogic, thus becoming the corporate successor of WiredLogic.  (*Id.* at  ¶¶ 43,

52.)  Despite allegedly introducing WiredLogic to DealerTrack Holdings, Falcone claims that he

was not paid any commissions or bonuses for facilitating the acquisition.  (*Id.* at ¶¶ 43, 50.)   He

asserts that Eldred and Shaw acted in concert with Passione and O'Neil[5] to terminate him just in

time to deprive him of his commission from the deal.  (*Id.* at ¶¶ 107-08.)  He also asserts that

Passione and O'Neil are liable to him for any unpaid wages, as they were directly responsible for

compensation at DealerTrack Holdings.  (*Id.* at ¶ 72.)

Falcone filed a seven-count complaint on February 23, 2006, alleging the following:

- Count I: WiredLogic and DealerTrack Holdings are liable for WiredLogic's
  breach of its June 2, 2005 contract with Falcone by failing to pay him for bonuses
  earned between June 2, 2005 and August 1, 2005.

_____

[5] O'Neil is allegedly the chairman of the board and chief executive officer of DealerTrack
Holdings.  (Compl. ¶ 7.)

- Count II: WiredLogic and DealerTrack Holdings are liable for breach of contract when WiredLogic failed to pay Falcone a finder's fee for its acquisition by DealerTrack.

- Count III: All defendants are liable under the WPCL because WiredLogic placed conditions on the payment of $800 in earned wages and failed to pay him for services rendered.

- Count IV: WiredLogic and DealerTrack Holdings are liable for breach of an implied contract between Falcone and WiredLogic, under which WiredLogic allegedly agreed to employ Falcone for a reasonable period of time after the August 1, 2005 contract.

- Count V: In the event that Falcone cannot recover under his claims of breach of express or implied contracts in Counts I, II, or IV, Falcone asserts in the alternative that WiredLogic and DealerTrack Holdings should be held liable to him under the theory of unjust enrichment.

- Count VI: WiredLogic and DealerTrack Holdings are liable for WiredLogic's breach of its duty of good faith and fair dealing to Falcone, which "prevented him from receiving the benefit of his employment with WiredLogic, including the June 2, 2005 Agreement, the August 1, 2005 Agreement, the contract for the finder's fee, and the implied contract."  (*Id.* at ¶ 100.)

- Count VII: Eldred, Shaw, O'Neil, and Passione[6] are liable for breaching their

_____

[6]The title of Count VII does not mention Passione, but the context of the allegations seems to include him, and the parties have briefed the court under that assumption.

7

fiduciary duty to Falcone, under the theory that he was one of WiredLogic's

largest creditors.  Falcone alleges the individual defendants breached their

fiduciary duty to him by terminating him in order to increase their own profits

from the sale of the WiredLogic trade name and service to DealerTrack

Holdings.

In addition to other unpaid commissions that could allegedly exceed $1,000,000, Plaintiff seeks

commissions for the DealerTrack Holdings deal in excess of $6,000,000, as well as interest and

attorney's fees.  (*Id*. at ¶ 43-44, 50.)

On March 23, 2006, WiredLogic filed a partial motion to dismiss pursuant to Rule

12(b)(6).  On March 28, 2006, defendants Eldred and Shaw filed a joint motion to dismiss for

lack of personal jurisdiction pursuant to Rule 12(b)(2), or in the alternative, a partial motion to

dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  On

March 31, 2006, defendant DealerTrack Holdings also filed a  motion to dismiss pursuant to

Rule 12(b)(2), or in the alternative, under Rule 12(b)(6). Passione and O'Neil jointly filed a

similar motion that same day.[7]   Plaintiff filed his omnibus response on April 17, 2006,

defendants filed their omnibus reply on April 21, 2006, and plaintiff filed his omnibus sur-reply

on April 24, 2006.

## II.  DISCUSSION[8]

---

[7]This case was reassigned to the undersigned on April 12, 2006.

[8]The parties refer solely to Pennsylvania law in their briefs.  While Pennsylvania, New
Hampshire, and New York law could potentially apply here, the parties agree the court does not
need to make a choice-of-laws determination at this point because it does not appear that the laws
of these jurisdictions materially differ with respect to the issues presented.

As outlined above, Falcone seeks compensation for services he performed during his employment with WiredLogic, alleging breach of actual and implied contracts, unjust enrichment, violations of the WPCL, breach of the duty of good faith and fair dealing, and breach of fiduciary duty.  Specifically, Falcone asserts that WiredLogic owes him bonuses due under his June 2, 2005 contract, salary due under his August 1, 2005 contract, a finder's fee for his role in DealerTrack Holding's acquisition of DealerWire, and damages for WiredLogic's alleged breach of its implied guarantee that he would be employed for a reasonable period of time in order to obtain the benefit of sharing his contacts with WiredLogic.   In addition to asserting claims against WiredLogic, Falcone contends that DealerTrack Holdings is liable for WiredLogic's actions under the theory of successor liability.  He also seeks to impose liability on the individual defendants, Shaw, Eldred, Passione, and O'Neil, for violations of the WPCL and for breach of fiduciary duty.

According to its motion to dismiss under Rule 12(b)(6), WiredLogic argues that the court should dismiss several counts in Falcone's complaint, stating that:  (1) Falcone's breach of contract allegations in Count II, regarding his right to a finder's fee, fails to state a claim because Falcone did not plead the satisfaction of a condition precedent in the contract; (2) Falcone's claim for breach of implied contract in Count IV fails because Falcone was an at-will employee and the complaint fails to plead any exceptions to that doctrine; and (3) Falcone's claim for breach of good faith and fair dealing in Count VI  fails because Pennsylvania law does not recognize that cause of action as separate from a breach of contract claim.

Pursuant to Rule 12(b)(2), DealerTrack Holdings, O'Neil, Passione, Shaw, and Eldred all argue that the court lacks personal jurisdiction over them individually, or in the alternative,

should dismiss some or all of Falcone's claims against them under Rule 12(b)(6).  With regard to

its alternative motion, DealerTrack Holdings argues that the court should dismiss all of Falcone's

claims against it because Falcone's presumption of successor liability fails as a matter of law.  As

a third alternative, DealerTrack Holdings urges the court to dismiss Counts II, IV, and VI against

it for the reasons described in WiredLogic's motion to dismiss.  With regard to the individual

defendants' alternative motions to dismiss, they all urge the court to dismiss Count VII on the

grounds that they had no fiduciary duty to Falcone, or at the very least, to strike the claim for

legal fees in that count.[9]  O'Neil and Passione also move the court to dismiss Count III on the

grounds that there is no basis for imposing liability on them under the WPCL.

 Because I conclude that the court does not have personal jurisdiction over some of the

defendants, I will address that issue first and then discuss the other arguments made by the

remaining defendants.

A. Personal Jurisdiction

 1. Standard

 In the present case, all of the defendants except for WiredLogic have moved the court to

dismiss Falcone's claims for lack of personal jurisdiction under Rule 12(b)(2).  Once a defendant

has raised the lack of personal jurisdiction as a defense, the burden shifts to the plaintiff to

demonstrate by a preponderance of the evidence that the relevant jurisdictional requirements are

met.  *Mellon Bank (East) PFSF, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

---

 [9]In their separate motions, the defendants also moved that Falcone's claims for attorney's
fees should be stricken from all counts of the complaint, except Count III (the WPCL claim).  In
his omnibus response, the plaintiff consented to striking his claim for attorney's fees in Counts I,
II, IV, V, and VI.

"The plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence," and "at no point may a plaintiff rely on the bare pleadings alone to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). If no evidentiary hearing has been held, the plaintiff "is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings LTD*, 292 F.3d 361, 368 (3d Cir. 2002) and *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

In deciding a Rule 12(b)(2) motion, a district court sitting in diversity looks to the law of the forum state to determine whether the plaintiff has demonstrated that the relationship among the defendant, the forum, and the litigation warrants the exercise of jurisdiction. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (citing *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985)); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing Fed. R. Civ. P. 4(e)). Generally, a court sitting in diversity first determines whether the forum state's long-arm statute would permit the courts of the forum state to exercise jurisdiction, and then determines whether the exercise of jurisdiction would satisfy federal due process. *Imo Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). However, because Pennsylvania's long-arm statute permits the exercise of personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the Fourteenth Amendment, the state long-arm statute is coextensive with the limit of federal due process. 42 Pa. Cons. Stat. Ann. § 5322(b) (2006) ("the jurisdiction of the tribunals of [Pennsylvania] shall extend to all [nonresidents] to the fullest extent allowed under the

11

Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United State"). Consequently, the essential question is whether asserting personal jurisdiction over defendants would comport with the requirements of due process. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

Due process "shields persons from the judgments of a forum with which they have established no substantial ties or relationship." *Gen. Elec. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Accordingly, it requires that a defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The analysis "'will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant's conduct and connection with the forum State must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There are two ways in which a plaintiff can establish that the exercise of personal jurisdiction comports with due process. First, if a plaintiff can demonstrate that a nonresident defendant has "continuous and systematic" contacts with the forum, the court may exercise general jurisdiction over any claim against the defendant regardless of whether the claim's subject matter has any connection to the forum. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

12

Alternatively, if the plaintiff can show that a particular claim arose from the defendant's forum-related activities and the defendant has the necessary minimum contacts with the forum state, the court may exercise specific jurisdiction over that particular claim. *Gen. Elec.*, 270 F.3d at 150 (citing *Burger King*, 471 U.S. at 472).

If a plaintiff fails to demonstrate the defendant has the requisite minimum contacts at this stage of the proceedings, the Third Circuit has made clear that a district court should generally grant requests for discovery into jurisdictional facts before dismissing a case, unless the plaintiff's jurisdictional claim is "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citing *Mass. Sch. of Law at Andover v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)); *Renner v. Lanard Toys, Ltd.*, 33 F.3d 277, 283-84 (3d Cir. 1994) (permitting jurisdictional discovery and stating that leave to conduct jurisdictional discovery should be freely permitted). A plaintiff's right to jurisdictional discovery should be sustained where a plaintiff presents "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between [the party] and the forum state." *Toys "R" Us*, 318 F.3d at 456 (citing *Mellon Bank*, 960 F.2d at 1217). On the other hand, mere unsupported allegations that a defendant "transacts business," has "contacts," or "expressly targeted Pennsylvania residents" are clearly frivolous and discovery will be denied. *Mass. Sch. of Law*, 107 F.3d at 1042; *Parker v. Learn the Skills Corp.*, 2006 U.S. Dist. LEXIS 12468 (E.D. Pa. Mar. 23, 2006); *see also Rose v. Granite City Police Dep't*, 813 F. Supp. 319, 321 (E.D. Pa. 1993) (refusing discovery where plaintiff failed to present affidavits or other evidence establishing a threshold prima facie showing of jurisdiction). "The scope of discovery is within the court's discretion, and allowing such discovery is premised on the assumption that further

discovery would be worthwhile." *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999).

       2.      DealerTrack Holdings

In this case, plaintiff asserts that DealerTrack Holdings is subject to the court's jurisdiction under two theories: (1) general jurisdiction based on DealerTrack Holdings and its predecessors' contacts in Pennsylvania, and (2) specific jurisdiction based solely on WiredLogic's contacts, on the theory that DealerTrack Holdings inherits those contacts as WiredLogic's successor.  However, at this time, plaintiff has failed to make a sufficient showing that jurisdiction exists under either theory.

       a.      General Jurisdiction

As stated above, general jurisdiction requires a showing that DealerTrack Holdings has "continuous and systematic" contacts with the forum.  *Helicopteros Nacionales de Colombia*, 466 U.S. at 414.  "A plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction."  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Asso*c., 819 F.2d 434, 437 (3d Cir. 1987) (citing *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 212 (3d Cir. 1984) and *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Engas*, 675 F.2d 587, 589 (3d Cir. 1982)).  Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."  *Reliance Steel Prods.,* 675 F.2d at 589.

 Falcone alleges that the court may exercise general jurisdiction over DealerTrack Holdings because (1) DealerTrack Holding's predecessor by merger, DealerTrack, Inc., is a Pennsylvania registered entity, and that registration should be attributed to DealerTrack Holdings; (2) DealerTrack Holdings has extensive relationships with automobile dealerships in

Pennsylvania, and (3) DealerTrack Holdings integrated WiredLogic's customers into its customer

base, thereby acquiring all its contacts in Pennsylvania.  While DealerTrack disputes all these

allegations,[10] I must assume plaintiff's allegations are true and draw any disputed facts in

plaintiff's favor in determining whether he has met his jurisdictional burden at this stage in the

proceedings. *Miller Yacht Sales*, 384 F.3d at 97.  I will discuss each of these pieces of evidence

in turn.

Plaintiff alleges that DealerTrack Holdings should inherit the state registration of its

predecessor by merger, DealerTrack, Inc.  Even assuming a corporation could inherit the state

registration of a predecessor by merger,[11] plaintiff's evidence supporting his allegation is thin.  In

support of his claim that DealerTrack Holdings was formed out of a merger between

DealerTrack, Inc. and another entity, Webalg, Inc., plaintiff cites two documents, neither of

---

[10] DealerTrack Holdings alleges that it has no contacts with Pennsylvania that permit the court to exercise personal jurisdiction within the bounds of due process.   In support of its motion to dismiss, DealerTrack Holdings provides a declaration stating it has never registered to do business, advertised, or paid taxes in Pennsylvania, has never had customers in Pennsylvania, has never held a license issued by a Pennsylvania agency, has never owned real property in Pennsylvania, and with the exception of this lawsuit, has never been involved in a lawsuit in Pennsylvania. (DealerTrack Holdings Mot. to Dismiss Tab A.)  Furthermore DealerTrack Holdings attests that it has never had any employees in Pennsylvania, nor did it employ, hire, or terminate Falcone. (DealerTrack Holdings Mot. to Dismiss Tab A.)  DealerTrack Holdings also asserts it is not the entity that bought assets of WiredLogic, and provides a declaration that states a subsidiary of DealerTrack Holdings known as DealerTrack Data Services, Inc. ("DealerTrack Data Services") acquired substantially all the assets of and assumed only certain liabilities of WiredLogic, which assumed liabilities did not include any liabilities related to Falcone. (DealerTrack Holdings Mot. to Dismiss Tab A.)  In support of its declaration, DealerTrack attaches portions of the Asset Purchase Agreement between DealerTrack Data Services, Inc. and WiredLogic.  (DealerTrack Holdings Mot. to Dismiss Tab 1.)

[11] Plaintiff provides no case law supporting his proposition that a corporation can inherit the state registration of a predecessor by merger for the purposes of determining personal jurisdiction.

which lead to the conclusion that DealerTrack Holdings was formed as a result of the merger of DealerTrack, Inc. and Webalg, Inc.  Falcone presents a prospectus of DealerTrack Holdings, which states that "we are a Delaware corporation formed in August 2001 *in connection* with the combination of DealerTrack, Inc., which commenced operations in February 2001, and [W]ebalg, [I]nc., which commenced operations in April 2000."  (Pl.'s Omnibus Resp. Ex. E (emphasis added).)  Falcone also provides a press release which confirms a "merger" between DealerTrack, Inc. with Webalg, Inc., but it does not mention DealerTrack Holdings.  (Pl.'s Omnibus Resp. Ex. D.)  Even plaintiff admits that this evidence is insufficient to demonstrate a merger, as plaintiff states in his surreply: "it is entirely unclear on the current state of the record what [the DealerTrack, Inc./Webalg, Inc. deal] is."  (Pl.'s Surreply Regarding Def.'s Mot. to Dismiss 1-2.)  Moreover, plaintiff's allegations that DealerTrack Holdings was formed as a result of a merger is inconsistent with the general definition of a merger, in which one corporation is absorbed by the other and goes out of existence, but the absorbing corporation remains and retains its corporate identity.  *Knapp v. N. Am. Rockwell Corp.*, 506 F.2d 361, 365 (3d Cir. 1974).  Here, DealerTrack Holdings is not alleged to be one of the merging companies.  Moreover, plaintiff does not allege or provide evidence that DealerTrack, Inc. and Webalg, Inc. both ceased to exist after the deal and became DealerTrack Holdings, which would be evidence of a consolidation.  *Knapp*, 506 F.2d at 365 (noting that a "consolidation" takes place when two or more corporations combine and form a new corporate entity after the previous corporate identities are dissolved).

Plaintiff also relies on a February 6, 2006 press release that states DealerTrack Holdings has relationships with over "21,000 automotive dealers, including 80% of all franchised dealers,

more than 200 financing sources, including the 20 largest independent financing sources in the United States and nine captive financing sources, and a number of other service and information providers to the automobile retail industry." (Pl.'s Omnibus Resp. Ex. A.)  This press release, however, does not mention Pennsylvania, but according to plaintiff's own certification and his experience in the automotive retail industry, many of DealerTrack Holdings' customers are based in Pennsylvania.  (Pl.'s Omnibus Resp. Ex. 1.)   Plaintiff also points to a January 8, 2002 press release announcing the merger of DealerTrack, Inc. and Webalg, Inc., which states that DealerTrack, Inc. has customers in Pennsylvania.  (Pl.'s Omnibus Resp. Ex. D.)  However, DealerTrack Holdings is also not mentioned in this press release.

Finally, Falcone argues that by virtue of DealerTrack Holdings' acquisition of WiredLogic, it has integrated all of WiredLogic's Pennsylvania customers into its customer base. To support his claim that DealerTrack Holdings is the successor corporation to WiredLogic, Falcone points to the February 6, 2006 press release stating that "DealerTrack Holdings, Inc. today announced it has acquired substantially all of the assets and certain liabilities of WiredLogic, Inc. doing business as DealerWire." (Pl.'s Omnibus Resp. Ex. A.)  The press release also indicates that DealerWire's technology will be integrated with that of DealerTrack.  (*Id.*) However, nothing in the press release states that DealerTrack Holdings has maintained WiredLogic's customers, which plaintiff asserts includes eighteen Pennsylvania-based automobile dealer groups representing seventy-eight automobile dealerships as its customers. (*Id.* at Ex. 1 & Ex. C.)

Even accepting plaintiff's allegations as true and viewing all disputed evidence in his favor, Falcone fails to proffer the extensive and persuasive facts necessary to show that

DealerTrack Holdings has systematic and continuous contacts in Pennsylvania. *Reliance Steel Prods.,* 675 F.2d at 589.  While Falcone has presented some evidence that DealerTrack Holdings may have customers in Pennsylvania and may be related to some other corporate entity with a Pennsylvania registration, Falcone has presented no evidence as to the level, quality, or nature of these alleged contacts sufficient for the court to find that they rise to the level to support general jurisdiction.

        b.      Specific Jurisdiction

As stated above, specific jurisdiction is proper if a plaintiff can show that his claim or claims arose from the defendant's forum-related activities and the defendant has the necessary minimum contacts with the forum state. *Gen. Elec.*, 270 F.3d at 150 (citing *Burger King*, 471 U.S. at 472).   First, the plaintiff must establish that the defendant has the requisite minimum contacts with the forum state. *Burger King*, 471 U.S. at 474; *Imo Indus.*, 155 F.3d at 259.  These contacts must be such that the defendant's conduct in the forum state demonstrates the purposeful availment which underlies the personal jurisdiction inquiry. *Burger King*, 471 U.S. at 472; *Imo Indus.*, 155 F.3d at 259.  Where the conduct of a defendant is such that he reasonably should have foreseen being haled into court in the forum state, the necessary minimum contacts have been shown. *World Wide Volkswagen*, 444 U.S. at 297.  If the necessary minimum contacts do exist, then the court inquires into whether the exercise of personal jurisdiction would comport with traditional notions of "fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

Plaintiff asserts that specific jurisdiction is proper over DealerTrack Holdings because DealerTrack Holdings has inherited the liabilities of WiredLogic as its successor.  "[U]nder Pennsylvania law, the acts of a predecessor corporation may be attributed to its successor for

18

purposes of determining whether jurisdiction over the successor is proper." *Huth v. Hillsboro Ins. Mgmt.*, 72 F. Supp. 2d 506, 510 (E.D. Pa. 1990) (citing *Simmers v. Am. Cyanamid Corp.*, 576 A.2d 376, 381 (Pa. Super. 1990)).  Accordingly, jurisdiction is established if the successor corporation may be held liable under Pennsylvania's law of successor liability.  *UMAC, Inc. v. Aqua-Gas AKV LTD*, 2005 U.S. Dist. LEXIS 6124 (E.D. Pa. Mar. 30, 2005).

As neither party disputes that WiredLogic has the requisite contacts with Pennsylvania to be subject to personal jurisdiction, the court must only look to whether DealerTrack Holdings can be considered liable as its successor.  Under Pennsylvania law, "when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Cont'l Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005) (citing *Hill v. Trailmobile, Inc.*, 603 A.2d 602, 605 (Pa. Super. Ct. 1992)).  However, this general rule of non-liability can be overcome if the plaintiff demonstrates that "(1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation." *Id.* In his briefs, Falcone alleges that two of these exceptions apply in the present case:  that the transaction between DealerTrack Holdings and WiredLogic resulted in a consolidation and alternatively, no provisions were made for Falcone as a creditor of the corporation.  However, Falcone has not succeeded in demonstrating that jurisdiction exists under either theory.

With regard to Falcone's consolidation theory, a consolidation occurs when all the

combining corporations dissolve and lose their identities in favor of a new corporate entity that "takes over all the properties, powers and privileges, as well as the liabilities, of the constituent companies." *Knapp*, 506 F.2d at 365. However, plaintiff does not allege that WiredLogic or DealerTrack Holdings has dissolved, or that all the liabilities of the constituent companies have been assumed by a new corporate entity. *Smith Land & Improv. Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (3d Cir. 1988). Nor does the evidence presented by Falcone thus far support this conclusion. While Falcone cites the DealerTrack, Inc. press release on February 6, 2006 that states "DealerTrack Holdings, Inc. today announced it has acquired substantially all of the assets and certain liabilities of WiredLogic, Inc. doing business as DealerWire" (Pl.'s Omnibus Resp. Ex. A), this press release does not support the theory that DealerTrack Holdings and WiredLogic dissolved, or that a new corporate entity took over all the liabilities of both companies. Falcone also provides evidence that WiredLogic has ceased using the tradename DealerWire and that a company named "DealerTrack Data Services" has assumed use of that name. (Pl.'s Surreply Ex. A & B.) In addition, plaintiff cites to a website which states that Shaw, formally an officer WiredLogic, is now an employee of DealerTrack, Inc. and that he is currently managing the integration of the two companies. (Pl.'s Surreply Ex. C.) However, these latter two pieces of evidence do not even mention DealerTrack Holdings. As such, Falcone has failed to provide sufficient evidence that the WiredLogic-DealerTrack Holdings transaction amounted to a consolidation, and therefore, should give rise to jurisdiction under the theory of successor liability.

Second, plaintiff asserts that successor liability should be imposed on DealerTrack Holdings because no provisions have been made for Falcone in his capacity as a creditor of

WiredLogic.  However, under this exception to the general rule precluding successor liability,

plaintiff must also demonstrate that the transfer of assets was without adequate consideration.

*Cont'l Ins. Co.*, 873 A.2d at 1291.  Plaintiff never alleges, either in his complaint or in any of his

briefs, that the transaction involving DealerWire was without consideration, nor does he provide

any evidence supporting such a theory.   Accordingly, Falcone has not sufficiently alleged for

jurisdictional purposes that this exception to the general rule of non-liability should apply.

        c.     Jurisdictional Discovery

The record adduced by plaintiff does not establish either the "continuous and systematic"

contacts by DealerTrack Holdings through which to extend general jurisdiction, or the type of

"purposeful availment" necessary to extend specific jurisdiction under a "successor liability"

theory.  As noted above, where "the court is not satisfied by plaintiff's jurisdictional allegations,"

a plaintiff's right to jurisdictional discovery should be sustained where plaintiff presents "factual

allegations that suggest 'with reasonable particularity' the possible existence of the requisite

contacts between [the party] and the forum state."  *Toys "R" Us*, 318 F.3d at 456 (citing *Mellon*

*Bank*, 960 F.2d at 1217).

While not filing a formal motion, plaintiff has preserved his request for jurisdictional

discovery by asking for such discovery in his substantive briefs.  *See Renner v. Lanard Toys Ltd.*,

33 F.3d 277, 283 (3d Cir. 1994) (finding the district court should have given plaintiff time to

conduct discovery where plaintiff failed to make formal discovery requests, but preserved its

position that discovery was needed in its briefings in opposition to the motion to dismiss).

Falcone asks for jurisdictional discovery as to DealerTrack Holdings and its relation to other

DealerTrack entities, as well as leave to amend if DealerTrack Holdings is not the DealerTrack entity who assumed assets of WiredLogic. The evidence presented thus far by plaintiff, as well as the conflicting public statements provided by DealerTrack Holdings and other DealerTrack entities regarding their corporate lineage and the acquisition of WiredLogic's assets, provides sufficient basis to permit jurisdictional discovery. Accordingly, I will give Falcone sixty (60) days to conduct jurisdictional discovery, after which DealerTrack Holdings may file a renewed motion under Rule 12(b)(2). The court will consider any request for leave to amend the complaint at that time.

3.     Personal Jurisdiction over the Individual Defendants

I now turn to the individual defendants Passione, O'Neil, Shaw, and Eldred. In considering whether they have sufficient minimum contacts with Pennsylvania to render personal jurisdiction proper,[12] all of the individual defendants urge I apply the "fiduciary shield" doctrine, and not consider any contacts they had with Pennsylvania in their capacities as corporate officers. (Elred & Shaw Mot. to Dismiss 3 (citing *Nat'l Precast Crypt Co. v. Dy-Core of Pa, Inc.*, 785 F. Supp. 1186, 1191 (W.D. Pa. 1992).) Plaintiff objects, arguing that the fiduciary shield doctrine is not a valid legal doctrine. (Pl.'s Omnibus Reply (citing *Calder v. Jones*, 465 U.S. 783, 790 (1983).) I will address this issue first with regard to defendants Passione and O'Neil and then in regard to defendants Shaw and Eldred.

a.     Specific Jurisdiction over Passione and O'Neil

---

[12]Plaintiff does not contend that this court has general jurisdiction over the individual defendants. Therefore, my analysis will be confined to whether this court has specific personal jurisdiction.

Even if the fiduciary shield doctrine does not apply and I were to consider the alleged corporate contacts of Passione and O'Neil, plaintiff has failed to establish that this court has personal jurisdiction over them because, assuming all of the plaintiff's allegations to be true, *none* of plaintiff's allegations or affidavits state that defendants Passione or O'Neil had any contacts with Pennsylvania in their professional capacity.   In fact, in his omnibus response to defendants' motion to dismiss for lack of personal jurisdiction, plaintiff mentions O'Neil and Passione only once, and does not name any contacts they have with Pennsylvania.   Plaintiff never mentions O'Neil and Passione in his surreply, in any affidavits, or in any attached exhibits. Accordingly, plaintiff has failed to establish that Passione and O'Neil are subject to the jurisdiction of this court.

I further note that unlike plaintiff's position with regard to DealerTrack Holdings, plaintiff has offered no suggestion that discovery to investigate jurisdictional contacts might be productive with regard to defendants Passione or O'Neil.   In any event, the allegations as to personal jurisdiction are so lacking as to Passione or O'Neil that they are clearly frivolous under *Toys "R" Us*, 318 F.3d at 456.   Thus, plaintiff is not entitled to jurisdictional discovery with regard to Passione or O'Neil.   Therefore, because plaintiff failed to show that the defendants have the requisite minimum contacts, Passione and O'Neil's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) will be granted.[13]

_____

[13]The court also considers plaintiff's argument that personal jurisdiction exists over O'Neil and Passione because the WPCL provides for personal liability.   Plaintiff is incorrect:  the mere potential for liability under the WPCL does not alone confer personal jurisdiction over Passione and O'Neil.   A showing of minimum contacts is required.  *Sudofsky v. JDC Inc.*, 2003 U.S. Dist. LEXIS 18094, at *8 (E.D. Pa. Sept. 9, 2003); *Sneberger v. BTI Americas, Inc.*, 1998 U.S. Dist. LEXIS 18844, at *9 (E.D. Pa. Nov. 30, 1998); *Cent. Pa. Teamsters Pension Fund v.*

        b.      Specific Jurisdiction over Shaw and Eldred

On the other hand, the contacts of Shaw and Eldred require this court to consider the extent of protection afforded by the "fiduciary shield" doctrine under Pennsylvania law.[14] The fiduciary, or corporate, shield doctrine[15] protects officers and directors by limiting the extent to which their actions performed in the corporate capacity may be used to exercise jurisdiction over them individually. *Sneberger,* 1998 U.S. Dist. LEXIS 18844, at *3; *PSC Prof'l Servs. Group, Inc. v. Am. Digital Sys., Inc.*, 555 F. Supp. 788, 793 (E.D. Pa. 1983); *Maleski*, 653 A.2d at 62-63. The rationale for this doctrine is the concern over forcing officers and directors to choose either to "disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum." *PSC Prof'l Servs. Group*, 555 F. Supp. at 793.

Courts in this district, however, have held that the protections of the corporate shield doctrine are not absolute. *Fyk v. Roth*, 1995 U.S. Dist. LEXIS, at *6 (E.D. Pa. Feb. 10, 1995). Accordingly, courts have refused to permit a corporate officer to invoke the shield when the officer was involved in tortious conduct for which he or she could be held personally liable. *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 676 (E.D. Pa. 1997); *Rittenhouse & Lee v. Dollars & Sense, Inc.*, 1987 U.S. Dist LEXIS, at *13 n.6 (E.D. Pa. April 15, 1987) (holding that one of the factors a court should consider in the jurisdictional inquiry is the "extent

_____

*Burten*, 634 F. Supp. 128, 132 (E.D. Pa. April 8, 1986).

[14]Plaintiff argues that the corporate shield doctrine has no viability in light of *Calder*, 465 U.S. 783, in which the Supreme Court held that defendants' "status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790. However, the *Calder* language is limited to tortious conduct, which is not at issue in this case.

[15]Pennsylvania courts also refer to this doctrine as the "corporate shield" doctrine. *Maleski v. DP Realty Trust*, 653 A.2d 54, 62-63 (Pa. Commw. Ct. 1995).

and nature of [the] corporate officer's personal participation in the tortious conduct"). Courts have also invoked a second exception to the doctrine when a corporate officer has been charged with violating a statutory scheme that provides for personal, as well as corporate, liability. *See Huth v. Hillsboro Ins. Mgmt.*, 72 F. Supp. 2d 506, 511 (E.D. Pa. 1999) (holding that the corporate contacts of a corporate officer could be considered for jurisdictional purposes because the statute the plaintiff was suing under allowed the corporate officer to be held personally liable for statutory violations) (citing *Nat'l Precast Crypt Co.*, 785 F. Supp. at 1191); *see also Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.*, U.S. Dist. LEXIS 10057, at *21 n.10 (E.D. Pa. July 3, 1997) (noting that the only exceptions to the corporate shield doctrine are "(1) where the agent commits a tort in the forum state in his corporate capacity or (2) where the agent is charged with violating a statutory scheme that provides for personal as well as corporate liability").

In cases involving these exceptions, the courts look to the following three factors to determine whether it is proper to consider the defendant's corporate contacts in the jurisdictional inquiry: (1) the defendant's "role in the corporate structure"; (2) "the nature and quality of the [defendant's] forum contacts"; and (3) "the extent and nature of the defendant's personal participation in the [allegedly wrongful] conduct." *See Rittenhouse & Lee*, 1987 U.S. Dist. LEXIS 3061, at *13 n.6 (setting forth the three factors to consider in determining whether corporate contacts are relevant to the jurisdictional inquiry); *see also Elbeco*, 989 F. Supp. at 676 (applying the three *Rittenhouse & Lee* factors in determining whether to consider the defendant's corporate contacts with the forum); *Royal Gist-Brocades N.V. v. Sierra Prods. Ltd.*, 1997 U.S. Dist. LEXIS 20509, at **18-19 (E.D. Pa. Dec. 22, 1997) (same); *Beistle Co. v. Party U.S.A.*, 914

F. Supp. 92, 96 (M.D. Pa. 1996) (same); *Fyk*, 1995 U.S. Dist. LEXIS, at *6 (same).

In this case, the plaintiff alleges that Shaw and Eldred violated a statutory scheme (the WPCL) for which they could be held personally liable.[16]  Thus, this case falls within the second exception to the corporate shield doctrine.  I will therefore examine the factors set forth in *Rittenhouse & Lee* with regard to Shaw and Eldred.  The first factor requires an examination of their roles in the WiredLogic corporate structure.  Here, it is undisputed that these individual defendants played major roles in WiredLogic:  Shaw was its chief operating officer, while Eldred served as its president and chief executive officer at the time in question.  Therefore, the first prong of the *Rittenhouse & Lee* test is satisfied.  *See Lautman v. Loewen Group, Inc.*, 2000 U.S. Dist. LEXIS 8241, at *20 (E.D. Pa. June 15, 2000) (concluding that the first prong was satisfied because "the individual defendants were high-ranking corporate officials with a significant level of authority in the corporation").

The second and third prongs of the *Rittenhouse & Lee* test require an examination of the individual defendants' contacts with Pennsylvania to determine the nature and quality of the contacts and the personal participation of the officers with the allegedly wrongful conduct.  In general, the plaintiff alleges that Shaw and Eldred directed their activities "towards Plaintiff's employment and termination of his employment which were in Pennsylvania because that is where Plaintiff's employment was based." (Pl.'s Omnibus Resp. 10.)  Specific contacts include: (1) discussions regarding Falcone's potential employment at DealerWire in April and May 2005

---

[16] 43 Pa. Cons. Stat. Ann. § 260.6 (2006) provides that "the employer shall give written notice to the employee or his counsel of the amount of wages which he concedes to be due and shall pay such amount without condition within the time set by this act."  43 Pa. Cons. Stat. Ann. §§ 260.2a-260.3 (2006) provides for personal liability over individual defendants.

(Compl. ¶ 19); (2) employment agreements dated June 2, 2005 and August 1, 2005 received from Shaw and providing for a direct report to Shaw and Eldred (*Id.* at ¶¶ 24, 32, 38, Ex. A & B); (3) communications by telephone, fax, or email between the plaintiff's home office in Pennsylvania and the defendants' offices in New Hampshire during the course of his employment (Pl.'s Omnibus Resp., Ex. 1, Certification of Marc Falcone ¶ 3); (4) Shaw's request that Falcone attend the Automobile Trade Association Executives Conference in Connecticut in order to develop relationships with Pennsylvania dealerships through their trade groups, the Automobile Dealers Association of Greater Philadelphia, and the Pennsylvania Automotive Association (*Id.* at ¶ 5); (5) orders to target specific dealership groups in Pennsylvania (*Id.* at ¶ 6), to provide weekly reports listing all business development contacts, and to submit all pricing proposals offering discounts to potential clients for approval by the defendants (Compl. Ex. B); (6) decisions regarding the payment of wages (*Id.* at ¶ 71); and (7) WiredLogic's placement of a condition on the receipt of $800 in salary earned by Falcone prior to his termination:  "[T]he termination notice included the condition that the check was to be cashed '[i]f you agree with terms of the termination as described in this letter.'" (Compl. ¶ 41).  All of these allegations, considered together, support plaintiff's contention that Shaw and Eldred, as high-ranking WiredLogic executives, were involved in placing conditions upon wages due to Falcone upon his termination because they were ultimately responsible for all decisions regarding payment of wages.

However, Shaw and Eldred argue that none of Falcone's claims focus on their corporate conduct in Pennsylvania, thus these contacts should not be considered meaningful.  Specifically, they contend that discussions regarding potential employment, whether they took place over the phone or in person, did not take place in Pennsylvania, and Eldred's sole meeting with Falcone

27

occurred in New Hampshire.  (Eldred & Shaw Mot. to Dismiss, Tab A, Eldred Decl. ¶¶ 13-15 &
Tab B, Shaw Decl. ¶¶ 12-17.)  Moreover, according to the defendants, neither decisions about
payment of wages to Falcone nor his termination were made in this forum.  (Eldred & Shaw Mot.
to Dismiss 4.)  However, evidence that Shaw and Eldred did not visit or make employment
decisions in Pennsylvania is not dispositive of the issue.  Lack of physical presence in the forum
is probative, but does not necessarily demonstrate the lack of purposeful availment.  *See Grand
Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("Due process
does not require a defendant's physical presence in the forum before personal jurisdiction is
exercised.").  Rather, a defendant's intentional actions in one forum which have an effect in a
second forum may provide a sufficient basis for finding minimum contacts in the second forum.
*See Carteret*, 954 F.2d at 148; *Leonardo Da Vinci's Horse, Inc. v. O'Brien*, 761 F. Supp. 1222,
1227 (E.D. Pa. 1991) (citing *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984) and *Calder*, 465
U.S. 783).  Here, because of the employment relationship between Shaw, Eldred, and Falcone,
Shaw and Eldred should have been aware that their corporate actions concerning wage payments
and termination would have been felt by Falcone in Pennsylvania.

Consequently, because of the significant roles played by Shaw and Eldred in the corporate
structure of WiredLogic, because it appears that they were personally involved in the commission
of the allegedly wrongful conduct (i.e., the placement of a condition upon wages due upon
termination), and because they had sufficient contacts with Pennsylvania, I conclude that Shaw
and Eldred are not entitled to the protection of the corporate shield.  Moreover, considering their
contacts with Pennsylvania, I conclude that their contacts with the forum state are sufficient to
satisfy the minimum contacts analysis.

28

The court must now determine whether the exercise of personal jurisdiction comports with the traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 477; *Farino*, 960 F.2d at 1226. A defendant bears the burden of persuasion on this matter, and must "show that the assertion of jurisdiction is unconstitutional." *Farino*, 960 F.2d at 1226. A "compelling case" must be presented that jurisdiction would not be reasonable in light of factors articulated by the Supreme Court. *Burger King*, 471 U.S. at 477; *World-Wide Volkswagen*, 444 U.S. at 292. "These factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.'" *Farino*, 960 F.2d at 1222 (quoting *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292)).

Eldred and Shaw fail to present sufficiently compelling evidence necessary to demonstrate that personal jurisdiction over them would be unreasonable. They address the fairness and justice prong by arguing that Pennsylvania has no interest in the outcome of the lawsuit. (Eldred & Shaw Mot. to Dismiss 5.) They submit that the plaintiff knowingly entered into a business relationship with an entity based outside of Pennsylvania and that his job responsibilities and automobile-industry contacts were not exclusive to Pennsylvania. (*Id.* at 5.) They further argue that the plaintiff's employment agreements do not identify Pennsylvania as the sole focus of his business development efforts ("Mr. Falcone was hired to identify and engage dealerships to use DealerWire, and those dealerships could have been anywhere in the country."). (*Id.*) However, in this case, both the interests of the plaintiff and this forum weigh in favor of

29

exercising personal jurisdiction over the defendants. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701-02 (3d Cir. 1990). The plaintiff, a citizen of Pennsylvania, who worked primarily from and communicated from his home office in Pennsylvania, has an interest in adjudicating this dispute in this forum. Moreover, while Shaw and Eldred contend that they "did not reach out to create a relationship" with Falcone (Eldred & Shaw Mot. to Dismiss 4), once created, he reported to them and they allegedly directed him to target dealership groups located within Pennsylvania as potential consumers. (Pl.'s Omnibus Resp., Ex. 1, Certification of Marc Falcone ¶¶ 3, 4-6.) Thus, the local effects of Falcone's networking efforts, under the direct supervision of Shaw and Eldred, give Pennsylvania an interest in this case.

As Shaw and Eldred do not suggest that the remaining factors are implicated here, I find that they have not met their burden of demonstrating that exercising jurisdiction over them would offend the traditional notions of fair play and substantial justice. For these reasons, I conclude that the court has jurisdiction to consider the plaintiff's claims against Shaw and Eldred, and I will therefore deny Shaw and Eldred's motion to dismiss for lack of jurisdiction.[17]

B.       Failure to State A Claim Upon Which Relief Can Be Granted

1.       Standard of Review

---

[17] As in his claims against O'Neil and Passione, plaintiff argues that the potential for personal liability under the WPCL confers automatic personal jurisdiction over Shaw and Eldred. As stated above, this reasoning is incorrect.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Courts will grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  In making its ruling, the court must accept as true all well-pled allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom, to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665–66 (3d Cir. 1988) (citations omitted).  "The issue is not whether [the claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).  But, when deciding a motion to dismiss, a court need not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

2.      Successor Liability of DealerTrack Holdings

In its alternative motion under Rule 12(b)(6), DealerTrack Holdings moves to dismiss all claims against it on the ground that plaintiff failed to plead sufficient facts necessary to establish successor liability.  However, the fact that plaintiff has not demonstrated successor liability for the purposes of personal jurisdiction over DealerTrack Holdings is not binding on the determination of adequate pleading under the liberal notice standard.  The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P.

31

8(a), (e).  The plaintiff's complaint is sufficient if it puts the defendant on notice of the essential

elements of the plaintiff's case.  *Nami*, 82 F.3d at 65.  Counts I through V of Falcone's complaint

state "DealerTrack is a successor to DealerWire." (Compl. ¶¶ 52, 60, 68, 87, 96, 101.)

Moreover, Falcone alleges that "on or about February 6, 2006, DealerTrack acquired DealerWire,

and upon information and belief, pursuant to this acquisition, DealerTrack assumed DealerWire's

liabilities, including its liability to Falcone."  (Compl. ¶ 43.)  These factual allegations are

sufficient to provide general notice to DealerTrack Holdings of Falcone's claims against it under

a theory of successor liability.  *See Pa. Dep't of Envtl. Prot. v. Concept Scis. Inc.*, 232 F. Supp.

2d 454, 459-61 (E.D. Pa. 2002) (finding that plaintiff's statement "PPT is a successor corporation

to CSI under the substantial continuity theory as applied by this Court" satisfied Rule 8's notice

requirement) (citations omitted).  Thus, Falcone states a claim against defendant for which relief

can be granted, and DealerTrack Holding's motion to dismiss under Rule 12(b)(6) is denied.

In the alternative, DealerTrack Holdings wishes to convert this portion of its Rule

12(b)(6) motion to a summary judgment motion so that the court may consider the asset-purchase

agreement it claims Falcone refers to in his complaint.  The Federal Rules of Civil Procedure

provide that a Rule 12(b)(6) motion to dismiss may be converted into a motion for summary

judgment if the court considers matters outside the pleadings.  Fed. R. Civ. P. 12(b).  The

decision to convert a Rule 12(b)(6) motion into one for summary judgment is within the court's

discretion.  *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994).  Doing

so, however, is premature where there has been little or no opportunity for discovery.  *Id.*; *see*

*also Childs v. Meadowlands Basketball Assocs.*, 954 F. Supp. 994, 997 (D.N.J. 1997) (citing

*Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992)).  Here, DealerTrack Holdings filed its

motion to dismiss approximately one month after Falcone filed his complaint, but before the parties had an opportunity to conduct discovery.  Thus, at this point in the litigation, it would be inappropriate for the court to treat defendant's Rule 12(b)(6) motion as a motion for summary judgment to consider the asset-purchase agreement, given the factual dispute as to whether DealerTrack Holdings acquired WiredLogic.

3.      Count II: Breach of Contract for a Finder's Fee

WiredLogic and DealerTrack Holdings have moved to dismiss Count II, wherein plaintiff asserts a right to a finder's fee.  Defendants argue that Count II fails to state a claim because Falcone did not plead the satisfaction of a condition precedent in the contract.[18]  Plaintiff, however, urges that the court should instead consider parol evidence of an oral promise to pay a finder's fee.  He argues that because the written agreements between the parties are not integrated writings and do not contemplate the subject matter of a finder's fee, parol evidence is admissible to prove the existence of the oral agreement.  In response, WiredLogic and DealerTrack contend that the parol evidence rule bars the introduction of such evidence because the agreements unambiguously concern the subject matter of the alleged oral representation in that they detail the parties' legal rights in the event of an acquisition.

The Pennsylvania Supreme Court has formulated parol evidence rule as follows:

_____

[18] Specifically, WiredLogic and DealerTrack Holdings contend Falcone did not allege the satisfaction of the conditions that the sale price paid in the acquisition of DealerWire exceed two dollars per share and that he be an employee of good standing at the time of the acquisition.

> Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

*HCB Contractors v. Liberty Pl. Hotel Assoc.*, 652 A.2d 1278, 1279 (Pa. 1995) (quoting

*Bardwell v. Willis Co.*, 100 A.2d 102, 104 (Pa. 1953)) (citations omitted).  The parol evidence

rule does not apply unless there is a final and complete writing that embodies the "'entire

contract between the parties,'" *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa.

2004) (quoting *Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924)) otherwise known as an

"integrated" agreement.  *Kehr Packages, Inc. v. Fidelity Bank*, 710 A.2d 1169, 1173 (Pa. Super.

1998) (citing *McGuire v. Schneider, Inc.*, 534 A.2d 115, 118 (Pa. Super. 1987)).  Where a writing

does not contain an integration clause, like the agreements in this case,  the court must examine

its terms to decide if they "import a complete legal obligation without any uncertainty as to the

object or extent of the [parties'] engagement." *Yocca*, 854 A.2d at 436 (quoting *Gianni*, 126 A. at

792).  Moreover, where the "written agreement and the alleged oral agreement 'relate to the same

subject-matter and are so interrelated that both would be executed at the same time, and in the

same contract, the scope of the [oral] agreement must be taken to be covered by the writing.'"

*Kehr Packages*, 710 A.2d at 117 (quoting *Gianni*, 126 A. at 792).  Thus, I must look to the terms

of the written employment agreements in the light most favorable to plaintiff, and compare them

to the subject matter of the alleged oral promise to pay a finder's fee, to determine if the parol

evidence rule bars consideration of that oral promise.

The plain language of the written acquisition/liquidation provisions appears not to

34

address the oral promise's subject matter of rewarding Falcone for facilitating an acquisition of

DealerWire.  Plaintiff alleges that "[a]t all times relevant, DealerWire agreed to fully and fairly

compensate Falcone *for finding an entity to acquire DealerWire*." (Compl. ¶ 56) (emphasis

added.)  However, the acquisition/liquidation provisions merely describe an additional payout to

Falcone and do not refer to his rights in the event he initiates the acquisition,[19] in contrast to the

bonus provisions which specify separate forms of payment in recognition of Falcone's "contacts

and efforts" in procuring membership and partnership deals. (Compl. Ex. A & B.)[20]   Thus, if I

---

[19]The June 2, 2005 employment contract states "Acquisition/liquidation event--if Wired Logic, Inc. sells DealerWire to another entity, and the sale price is greater than $2 per share, bonuses 3, 4, and 5 above that have been earned by the sale date will be paid out a second time." (Compl. Ex A.)   The August 1, 2005 employment contract states "Acquisition/liquidation event--if Wired Logic, Inc. sells DealerWire to another entity while you are an employee in good standing, and the sale price is greater than $2 per common share, you will be eligible to receive an amount equal to the bonuses you have been paid in the 6 months prior to the acquisition date." (Compl. Ex. B.)

[20] The June 2, 2005 employment agreement states:

> 3.  You will be eligible for a $5,000 bonus per 200 dealerships that join DealerWire, *as a direct result of your contacts and efforts.*

> 4.  You will be eligible for a $5,000 bonus if a partnership is formed with a minor partner *as a result of  your contacts and efforts.*

> 5.  You will be eligible for a $10,000 bonus if a partnership is formed with a major partner *as a result of your efforts and contacts.*

(Compl. Ex. A (emphasis added).)

The August 1, 2005 employment agreement states:

> Member Acquisition Bonus: You will be eligible to receive a bonus of .625 of 1 month of collected fee revenue for each new Member added *as a result of your business development efforts....*

> Ancillary Revenue Generation Bonus: You will be eligible for a bonus if a

accept plaintiff's allegations as true and consider them in the light most favorable to him, the written agreements do not relate to the subject matter of the oral agreement. *See Pilallis v. Elec. Data Sys. Corp.*, 1998 U.S. Dist. LEXIS 5934, at **8-9 (E.D. Pa. April 28, 1998) (finding that oral agreements about commission payments were a separate form of compensation from the monthly salary mentioned in employment contracts). Thus, parol evidence of an oral promise to pay a finder's fee for procuring an acquiring entity is admissible, and I find plaintiff has stated a claim upon which relief may be granted. Accordingly, I will deny WiredLogic's and DealerTrack Holding's motion to dismiss Count II of Falcone's complaint.

4.      Count IV: Breach of Implied Contract

WiredLogic and DealerTrack Holdings have moved to dismiss Falcone's breach of implied contract claim in Count IV. Defendants argue that Count IV fails to state a claim because Falcone was an at-will employee and the complaint fails to plead any exceptions to that doctrine. Plaintiff alleges "there existed an implied contract between DealerWire and Falcone that Falcone would be employed for a reasonable period of time in order to obtain the benefit of sharing his extensive list of industry contacts with DealerWire." (Compl. ¶ 79.) He also argues that "because he relied to his detriment on Defendant's promise to pay him when he used his extensive contacts in the industry," (Pl.'s Omnibus Resp. 17) he has properly stated a claim for relief on a theory of promissory estoppel. In essence, Falcone would like the court to recognize

----

partnership that generates revenue that is distinct for dealer Member monthly or set up fees is formed *as a result of your efforts*.

(Compl. Ex. B (emphasis added).)

promissory estoppel as an exception to the employment at-will doctrine.

The employment at-will doctrine defines the employer-employee relationship, and it permits the employer wide latitude in deciding how to conduct business. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 658 (3d Cir. 1990). "In Pennsylvania, there is a very strong presumption of at-will employment relationships and the level of proof required to overcome the presumption is arduous." *Buckwalter v. ICI Explosives USA, Inc.*, 1998 U.S. Dist. LEXIS 276, at *13 (E.D. Pa. Jan. 8, 1998) (citing *Geary v. U.S. Steel Corp.*, 319 A.2d 174, 176 (Pa. 1974)); *Violanti v. Emery Worldwide*, 847 F.Supp. 1251, 1258 (M.D. Pa. 1994). The presumption may be overcome by showing the existence of an express contract or an implied in fact contract. *Dugan v. Bell Tel.*, 876 F. Supp. 713, 726 (W.D. Pa. 1994). However, under Pennsylvania law, promises of permanent and lifetime employment are too vague to create an implied in fact contract and the employment relationship is presumed to be at-will. *See Seiss v. McClinic-Marshall Corp.*, 188 A. 109, 109-10 (Pa. 1936); *Scott v. Extracorporeal, Inc.*, 545 A.2d 334, 336-37 (Pa. Super. 1988). Thus, to overcome the at-will presumption, the plaintiff must demonstrate "an agreement for a definite duration, an agreement specifying that the employee will be discharged for just cause only, sufficient additional consideration or an applicable recognized public policy exception." *Kennelly v. Pa. Turnpike Comm'n*, 208 F.Supp.2d 504, 518-19 (E.D. Pa. 2002).

Because Falcone's employment contracts clearly provide that he is an "at-will employee," (Compl. Ex. A & B) and because the alleged implied in fact promise of employment for "a reasonable period of time" (Compl. ¶ 79) is too vague to be enforceable, Falcone must rely on an exception to overcome the presumption of at-will employment in order for his claim to

survive the defendants' motion to dismiss.  To that end, Falcone argues in his Omnibus Response

that he properly alleged an promissory estoppel claim for which relief may be granted.  (Pl.'s

Omnibus Resp. 17.)  However, Pennsylvania does not recognize a cause of action for promissory

estoppel as an exception to the employment at-will doctrine.  *Dugan*, 876 F. Supp. at 727

(dismissing claim that the plaintiff relied to his detriment on defendants' alleged promises and

policy not to engage in retaliatory discharges); *Anderson v. Haverford College*, 851 F. Supp. 179,

183 (E.D. Pa. 1994) (dismissing promissory estoppel claim where the plaintiff did not adequately

allege an express or implied contract) (citing *Paul v. Lankenau Hosp*., 524 Pa. 90, 569 A.2d 346,

348 (Pa. 1990)).

_____To support his promissory estoppel theory, Falcone incorrectly relies on *Riseman v.

Advanta Corp*., 2001 U.S. Dist. LEXIS 15760 (E.D. Pa. Sept. 12, 2001), a case that involved

claims of age discrimination, breach of a bonus contract, detrimental reliance upon on a bonus

promise, and violation of the WPCL.  *Riseman*, 2001 U.S. Dist. LEXIS 15760, at *1.  However,

neither this case, nor the others alluded to by plaintiff, provide clear reasoning to support

promissory estoppel as a means of defeating the employment at-will presumption.[21]  Given the

durability of this doctrine in Pennsylvania common law, far more persuasive authority is required

---

[21] The factual circumstances supporting Riseman's successful assertion of detrimental reliance are unclear from the opinion.  *See Riseman*, 2001 U.S. Dist. LEXIS 15760, at *21. Indeed, the court discusses Riseman's hiring in one sentence without alluding to an employment contract or an at-will presumption.  *Id.* at *2 (stating "In 1992, Advanta hired Riseman from Citibank.").  Falcone also cites *JMJ Enter., Inc. v. Via Veneto Italian Ice, Inc.*, 1998 U.S. Dist. LEXIS 5098 (E.D. Pa. April 15, 1998) (concerning a promise of exclusive sales and distribution rights) and *Robert Mallery Lumber Corp. v. B & F Assocs., Inc.*, 440 A.2d 579 (E.D. Pa. 1982) (concerning a bank's promise of guaranty).  Neither of these cases focus on at-will employment contracts and are thus distinguishable.

to overcome it.  Thus, I find that plaintiff has not stated a claim upon which relief may be granted.  Accordingly, I will grant WiredLogic's and DealerTrack Holding's motions to dismiss Count IV of Falcone's complaint.

     5.      Count VI: Breach of Duty of Good Faith and Fair Dealing

In Count VI, Falcone asserts that WiredLogic and DealerTrack Holdings are liable for breaching their duty of good faith and fair dealing.  However, Pennsylvania does not recognize a separate claim for breach of good faith and fail dealing that is independent from a breach of contract claim.  *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 701 (3d Cir. 1993) (determining that Pennsylvania law does not imply a separate tort for breach of a duty of good faith if relief is available under an established cause of action); *McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323, 328 (E.D. Pa. 1997) ("In the context of employment contracts, Pennsylvania law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing which is separate from a breach of contract action."); *Engstrom v. John Nuveen and Co., Inc.*, 668 F. Supp. 953, 958 (E.D. Pa. 1987) ("There is no claim under Pennsylvania law for breach of a duty of good faith and fair dealing where the employment relationship is at-will."). Accordingly, I will grant WiredLogic's and DealerTrack Holding's motions to dismiss Count VI of Falcone's complaint.

Plaintiff asks for leave to amend other contractual counts to include breach of duty of good faith and fair dealing claims.  (Pl.'s Omnibus Resp. to the Mot. to Dismiss 2.)  The Federal Rules of Civil Procedure instruct district courts that leave to amend pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  According, I grant plaintiff's request with

respect to Counts I and II.

      6.      Count VII: Breach of Fiduciary Duty

      Shaw and Eldred urge the court to dismiss Count VII on the ground that they had no fiduciary duty to Falcone, or at the very least, to strike the claim for legal fees in that count.  The court finds that Falcone clearly states a claim upon which relief can be granted.

      Under Pennsylvania law, the fiduciary relationship between the directors and officers of an insolvent corporation and the corporation's creditors is created when the corporation becomes insolvent.  *In re Main, Inc. v. Blatstein*, 1999 U.S. Dist. LEXIS 9312, at *42 (E.D. Pa. June 23, 1999) (citing *In re Martin*, 154 B.R. 490, 494) (Bankr. C.D. Ill. 1993) and *In re Total Containment, Inc.*, 355 B.R. 589, 598 (E.D. Pa. Bankr. 2005)).  Defendants contend that the complaint does not particularly allege that WiredLogic is insolvent (Eldred & Shaw Mot. to Dismiss 7).  Yet, Falcone alleges that Shaw and Eldred, as officers of WiredLogic, breached a fiduciary duty owed to him as a creditor "upon the sale of DealerWire to DealerTrack."  (Compl. ¶ 105.)  Moreover, Falcone alleges that DealerTrack Holdings is a successor to WiredLogic and thus assumed all liabilities, including any potential liability to Falcone.  (Compl. ¶¶ 52-53, 60-61, 68-69, 87-88, 96-97, 101-02.)  As stated above, the plaintiff's complaint is sufficient if it puts defendant on notice of the essential elements of the plaintiff's case.  *Nami*, 82 F.3d at 65.  Because I must apply this liberal notice pleading standard, and accept as true plaintiff's factual allegations and any reasonable inferences that may be drawn therefrom, *id.*, I conclude that Falcone has put forth sufficient allegations to state a claim that Shaw and Eldred, as corporate officers of WiredLogic, stood in a fiduciary relationship to Falcone, a creditor of WiredLogic,

following the purported acquisition of WiredLogic by DealerTrack.[22]  I also conclude that

plaintiff has sufficiently alleged a claim for breach by Shaw and Eldred of a fiduciary duty they

owed to Falcone.  Accordingly, I deny Shaw and Eldred's motion to dismiss Count VII of

Falcone's complaint.

The defendants also request a dismissal of plaintiff's demand for counsel fees in Count

VII's request for relief.  Pennsylvania courts apply the American rule to attorney's fees, which

provides no recovery for such fees without statutory authorization, a clear agreement by the

parties, or an otherwise recognized exception.  *First State Underwriters Agency of New England

Reinsurance Co. v. Travelers Ins. Co.*, 803 F.2d 1308, 1317-18 (3d Cir. 1986) (citing *Corace v.

Balint*, 210 A.2d 882, 887 (Pa. 1965)).  Since none of these exceptions present themselves in this

case, I grant Shaw and Eldred's request to dismiss Falcone's demand for attorney's fees in Count

VII.

### III. CONCLUSION

For the foregoing reasons, I will dismiss without prejudice defendant DealerTrack

Holding's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(2), and grant plaintiff's

request to conduct formal jurisdictional discovery only as to the relevant jurisdictional contacts

of DealerTrack Holdings and its related corporate entities.  I will grant defendant DealerTrack

Holdings leave to renew its Rule 12(b)(2) motion after the conclusion of jurisdictional discovery.

In addition, I will grant defendants O'Neil and Passione's Rule 12(b)(2) motion to dismiss

---

[22]Although the nature of the corporate relationship between DealerTrack Holdings and
WiredLogic is disputed, as stated above, it does appear that "under any reasonable reading of the
pleadings, the plaintiff may be entitled to relief" under a theory of successor liability.

because the WPCL alone does not automatically confer personal jurisdiction and because

plaintiff failed to allege sufficient contacts with the forum state to establish personal jurisdiction.

On the other hand, I will deny defendants Shaw and Eldred's Rule 12(b)(2) motion to dismiss

because their alleged contacts with the forum state are enough to satisfy the minimum contacts

analysis and because the court's exercise of personal jurisdiction comports with the traditional

notions of fair play and substantial justice.

Furthermore, I will deny defendant DealerTrack Holdings' motion to dismiss all claims

pursuant to Rule 12(b)(6) because plaintiff's allegations provide sufficient notice of his claims

against the defendant under the theory of successor liability.  Regarding Count II, alleging breach

of contract for a finder's fee, I will deny the Rule 12(b)(6) motions to dismiss of defendants

WiredLogic and DealerTrack Holdings due to plaintiff's parol evidence of an oral promise to pay

a finder's fee.  I will grant the Rule 12(b)(6) motions to dismiss of defendants WiredLogic and

DealerTrack Holdings regarding Count IV, alleging breach of implied contract, as plaintiff's

allegations fail to state grounds for relief because Pennsylvania does not recognize promissory

estoppel as an exception to the employment at-will doctrine.  I will also grant the defendants

WiredLogic's and DealerTrack Holdings' Rule 12(b)(6) motions to dismiss Count VI, alleging

breach of good faith and fair dealing, as Pennsylvania does not recognize a separate claim for

breach of good faith and fail dealing that is independent from a breach of contract claim.  I grant

plaintiff leave to amend Count II, a contractual count, to include breach of a duty of good faith

and fair dealing claim.  Finally, regarding Count VII, alleging breach of fiduciary duty, I will

deny defendants WiredLogic's and DealerTrack Holdings' Rule 12(b)(6) motions to dismiss

because plaintiff's allegations state a claim upon which relief may be granted.  However, I will

dismiss plaintiff's claim for attorney's fees in Count VII because Pennsylvania does not provide for counsel fees in the circumstances present in this case.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARC FALCONE,                                         :
Plaintiff,                                            :
                                                      :  CIVIL ACTION
v.                                                    :
                                                      :  NO. 06-800
WIREDLOGIC, INC., *et al.*                            :
Defendants.                                           :


ORDER


        AND NOW, this _____ day of October 2006, upon consideration of the motion

to dismiss filed by defendant WiredLogic, Inc. (Docket # 9) under Federal Rule of Civil

Procedure 12(b)(6); the motions to dismiss filed by defendants Cameron Eldred and Gale H.

Shaw, III (Docket #11),  DealerTrack Holdings, Inc. (Docket #13), and Mark O'Neil and Vincent

Passione (Docket #15) under Federal Rules Civil Procedure 12(b)(2) and 12(b)(6); plaintiff's

omnibus response thereto (Docket #25); defendants' omnibus reply (Docket #26); and plaintiff's

omnibus surreply (Docket #27), it is ORDERED as follows:

        1.      Plaintiff's request to conduct formal jurisdictional discovery is hereby GRANTED

                only as to the relevant jurisdictional contacts of DealerTrack Holdings, Inc. and its

                related corporate entities.  Plaintiff shall have sixty (60) days for jurisdictional

                discovery.

        2.      Defendant DealerTrack Holdings, Inc.'s motion to dismiss pursuant to Federal

                Rules of Civil Procedure 12(b)(2) is hereby DENIED WITHOUT PREJUDICE

with leave to renew the motion after the conclusion of jurisdictional discovery.

3.      Defendants O'Neil and Passione's motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(2) is hereby GRANTED and all claims against these

defendants are DISMISSED WITHOUT PREJUDICE.  Defendants O'Neil and

Passione's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is therefore

DISMISSED AS MOOT.

4.      Defendants Shaw and Eldred's motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(2) is DENIED.

5.      Defendant DealerTrack Holding, Inc.'s motion to dismiss all claims pursuant to

Federal Rule of Civil Procedure 12(b)(6) is DENIED.

6.      With regard to Count II of plaintiff's complaint alleging breach of contract for a

finder's fee, the motions to dismiss of defendants WiredLogic, Inc. and

DealerTrack Holdings, Inc. are DENIED.

7.      With regard to Count IV of plaintiff's complaint alleging breach of implied

contract, the motions to dismiss of defendants WiredLogic, Inc. and DealerTrack

Holdings, Inc. are GRANTED.  Count IV of plaintiff's complaint is DISMISSED.

8.      With regard to Count VI of plaintiff's complaint alleging breach of good faith and

fair dealing, the motions to dismiss of defendants WiredLogic, Inc. and

DealerTrack Holdings, Inc. are GRANTED.  Count VI of plaintiff's complaint is

DISMISSED.

9.       Plaintiff's request for leave to amend Counts I and II to include the allegations

contained in Count VI is GRANTED.  Plaintiff's request to amend Count IV is

DENIED AS MOOT.

10.     With regard to Count VII of plaintiff's complaint alleging breach of fiduciary duty, defendants Shaw and Eldred's motion to dismiss is DENIED.  Plaintiff's claim for attorney's fees in Count VII is DISMISSED.

11.     As stipulated by the parties, plaintiff's claims for attorney's fees in Counts I, II, IV, V, and VI are DISMISSED.


                                        s/ William H. Yohn Jr., Judge
                                        _____
                                        William H. Yohn Jr., Judge